IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PAULA TURNER,<br><br>Plaintiff,<br><br>v.<br><br>AIG DOMESTIC CLAIMS, INC., AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, and SARETSKY, HART, MICHAELS & GOULD, P.C.,<br><br>Defendants. | ) | 4:10CV3159<br><br>**MEMORANDUM AND ORDER** |

This matter is before me on an appeal from and objection to Magistrate Judge Zwart's decision granting a motion to disqualify counsel for Paula Turner ("Turner"), the plaintiff. Deciding that Judge Zwart's decision was premature, I reluctantly reverse the order of disqualification.

## *I. NOTICE*

Ryan Cooper is one of my law clerks. He shares a position as one of my chambers clerks. For that position, he is a term employee—meaning that he can work no more than four years. He also has a half-time position as one of the pro se staff attorneys. That position is a permanent position so long as there is funding available. In addition to my normal duties, I manage the pro se staff attorneys.

Mr. Cooper resides with Patricia L. Vannoy, one of Turner's lawyers. For ethical purposes, I analogize Mr. Cooper's relationship to Ms. Vannoy as similar to marriage.

Consistent with the *Code of Conduct for Judicial Employees*, Mr. Cooper has had no dealings with this case, and he will have none in the future. He has been and will be shielded from discussions related to this case.[1]

Despite Mr. Cooper's relationship with Ms. Vannoy, I need not recuse myself. *See*, *e.g.*, *Compendium of Selected Opinions* § 3.5(d) (last accessed October 12, 2011) ("judge need not recuse where the spouse of the judge's law clerk . . . appears as counsel, but must ensure that . . . the law clerk [does not do] any work on the case.").[2] However, "[i]t is advisable not only to isolate the current law clerk from that case, but also to inform the parties that this is being done." *Id.* I therefore provide the parties with this notice.

## *II. BACKGROUND*

So as not to unduly extend my opinion, I assume that the reader is somewhat familiar with this case. In any event, I simplify the record for the sake of clarity.

Turner, who had worked in the securities industry, sued Saretsky, Hart, Michaels & Gould, P.C., ("Defendant Law Firm"), an insurance company ("AISLIC"), and a claims-processing firm ("AIG") that worked for AISLIC. Turner claims that she was covered by an "errors and omissions" policy issued by AISLIC. She asserts that multiple arbitration actions were brought against her, and pursuant to a reservation of rights, AISLIC and AIG retained Defendant Law Firm to represent Turner. When the policy limits were exhausted, Turner claims that Defendant Law Firm withdrew. Turner asserts that Defendant Law Firm was controlled by AISLIC

---

[1]I personally researched and wrote this opinion. Jan Rempe, the senior career law clerk in my chambers, edited it.

[2]The *Compendium* surveys the confidential opinions of the Judicial Conference's Committee on Codes of Conduct. It is available only to federal judges. This citation is provided should this issue require appellate review.

and AIG. After Defendant Law Firm withdrew, Turner alleges that she was forced to defend the arbitrations and eventually negotiate a settlement. She now sues the defendants for breach of contract, bad faith, fraudulent misrepresentation, negligent misrepresentation, negligence and legal malpractice.

The Mattson, Ricketts Law Firm and Compass Legal represented some of the claimants in the arbitrations. J.L. Spray, with the Mattson Ricketts Law Firm, and David Gaba, with Compass Legal, were among the primary lawyers for the arbitration claimants. Those same firms and lawyers now represent Turner.

Turner entered into a settlement with some of the arbitration claimants entitled "Settlement Agreement[,] Covenant Not to Sue and Covenant Not to Execute." (Filing No. 30-9.) The agreement does not appear to be dated.

Without intending to precisely characterize the exact nature of the agreement, it is fair to state (1) that Turner agreed to the entry of arbitration awards against her in the total sum of $4.5 million; (2) that Turner agreed to cooperate in the prosecution of suits against AISLIC and Defendant Law Firm under the insurance policy and otherwise; and (3) that Turner agreed to assign her policy and suit rights to the claimants. In exchange, the claimants agreed not to execute on Turner's assets in order to satisfy the arbitration awards. The agreement called for the "laws of the State of Nebraska" to "apply to any questions concerning the interpretation and enforcement of this agreement."

The settlement agreement was signed by Turner. There is no indication in the agreement that she was separately represented by counsel. The agreement was also signed by Compass Law Group and David Gaba and the Mattson Ricketts Law Firm and J.L. Spray. In addition, a third law firm and one of its members, James B. Cavanagh, signed the agreement. All of these lawyers were acting for the claimants.

The Defendant Law Firm filed a motion to disqualify Compass Legal, Gaba, the Mattson Ricketts Law Firm and Spray. Applying "public policy concerns" regarding the possibility for collusion when an attorney represents a former litigation adversary in a subsequent malpractice action, Judge Zwart granted the motion, reasoning that it "is not clear Turner had any reasonable opportunity to decide who would represent her." (Filing No. 44 at CM/ECF p. 11.[3])

Separately, Judge Zwart also ruled there were "[a]dditional concerns under relevant ethical rules" in that "Spray's and Gaba's testimony is certainly material as it provides a complete picture of the events" related to Turner's allegations that the Defendant Law Firm failed to take reasonable steps to settle the arbitrations, failed to communicate Turner's desire to settle the cases and failed to advise Turner of settlement offers. (*Id*. at CM/ECF pp. 12, 14.)

Judge Zwart added:

> Furthermore, Turner makes no mention of the fact the Saretsky Firm asserts as an affirmative defense that the Settlement Agreement and this case are the result of collusion between Spray, Gaba, and Turner. . . . it is difficult to imagine Turner addressing the affirmative defense without offering some sort of evidence from Spray and Gaba regarding the negotiations and execution of the Settlement Agreement.

(*Id*. at CM/ECF p. 14.)

In connection with Judge Zwart's last point, the Defendant Law Firm asserts as affirmative defenses, among others, the following:

---

[3]Without explanation, Judge Zwart also disqualified the Golbeck Roth Law Firm. That firm does not appear as counsel in this case, and I know of no authority that would allow a preemptive disqualification without at least giving that firm notice and an opportunity to be heard. For that separate reason, the order disqualifying the Golbeck Roth Law Firm is reversed.

> Alleges, specifically, that the real parties in interest are the underlying claimants in the Arbitrations who were (or purport to be) the beneficiaries of an underlying collusive agreement with Plaintiff that resulted in Plaintiff's acquiescence to the amount of the Award referenced at paragraph 117 of Plaintiff's Complaint in exchange for Plaintiff's agreement to pursue the present legal action and to provide the proceeds of such pursuit to the Arbitration claimants and/or the attorneys of record who represented those claimants and who presently represent Turner in this action.
>
> . . .
>
> Alleges that the collusive agreement referenced at paragraphs 131 and 134 constitutes an illegal or impermissible attempt to assign a legal malpractice claim. Specifically, if the collusion between or amongst the Plaintiff, the Arbitration claimants and/or her present attorneys is determined to be a valid agreement, the agreement nevertheless constitutes an impermissible assignment of a malpractice claim and that even though Turner remains the Plaintiff in name, she is not the real party in interest, however, the real parties in interest to whom the claim is purportedly assigned would be barred by law from bringing the present claim.
>
> States Plaintiff has failed to join necessary or indispensable parties under Fed. R. Civ. P. 19, and further alleges that the joinder of the indispensable, real parties in interest would be barred as a matter of law based on the illegal or impermissible attempt to assign Plaintiff's malpractice claim.

(Filing No. 13 at CM/ECF pp. 21-22 at ¶¶ 130, 135-136 (paragraph numbering omitted).)

Defendant Law Firm provided Judge Zwart with evidence (a transcript) that Turner had called one of its members after the lawyers had withdrawn but before she executed the settlement agreement. In that telephone call, Turner told a lawyer from Defendant Law Firm and one of his colleagues that Spray or Gaba or both had tried

to convince Turner to settle with them and "then pursue a lawsuit against AIG and also against [Defendant Law Firm]. They called it a malpractice suit on this phone call." (Filing No. 35-21 at CM/ECF p. 2.) Judge Zwart placed a great deal of emphasis on this evidence, suggesting that it illustrated the possibility for collusion that could in turn result in a lack of confidence in the legal system. (Filing No. 44 at CM/ECF p. 10).

Subsequent to Judge Zwart's order, and the appeal and objections to that order, I allowed Turner to submit additional evidence and I also allowed Defendant Law Firm to submit additional evidence. (See Filing Nos. 45, 46, 52, 54, 55, 56, 57.) I treated Judge Zwart's ruling as dispositive within the meaning of Federal Rule of Civil Procedure 72(b) and concluded that I had the power to take additional evidence that had not been provided to Judge Zwart. *See also* NECivR 72.2(b)(2).

Turner produced an agreement dated July 30, 2010. (Filing No. 46-2.) That agreement is entitled "Agreement for Joint Representation, Waiver of Conflict, and Division of Attorney's Fees and Awards." Like the earlier agreement, the joint-representation agreement was to be "governed by and construed in accordance with" Nebraska law. (*Id*. at CM/ECF p. 8.)

Without intending to precisely characterize the exact nature of the agreement, it is fair to state that: (1) Turner and the arbitration claimants agreed to joint representation by Spray and the Mattson Ricketts Law Firm in the prosecution of actions against the defendants; (2) Turner and the arbitration claimants waived conflicts of interest; (3) Spray and the Mattson Rickets Law Firm agreed to a one-third contingency fee; (4) the claimants agreed that Turner would receive the first $30,000 of any net proceeds; (5) Turner agreed that the claimants would receive net proceeds in excess of $30,000 but not exceeding $4,530,000; and (6) Turner and the claimants agreed that half of the net proceeds over $4,530,000 would be paid to Turner and half to the claimants.

The agreement was signed by Turner. Separately, Spray signed for the claimants and for the Mattson Ricketts Law Firm. David Gaba, and Compass Legal, were not signatories. No other lawyers signed the agreement. There is no indication in the agreement that Turner was separately represented by counsel.

When the matter was pending before Judge Zwart, Turner filed an affidavit indicating that she was separately represented on certain matters by Kevin McManaman of the Knudsen Berkheimer Richardson & Endacott firm both before and after the Defendant Law Firm withdrew from representing her in the arbitrations. (Filing No. 40-2.) In particular, Turner swore that she consulted with this independent lawyer after the Defendant Law Firm withdrew from representing her, and those discussions involved: (1) arbitration settlement amounts; (2) whether Turner could recoup monies from AIG that Turner paid for "retentions," as well as attorney fees incurred both before and after the defense stopped; (3) bankruptcy; and (4) other alternatives. It is not clear, however, that Turner specifically consulted McManaman regarding the settlement agreement or the joint-representation agreement.

Turner swears that "I desire to recover my losses in this case and I believe that my best chance to do that is to keep my current counsel." (*Id.*) She also indicates that she cannot afford to pay a lawyer an hourly fee, and she does not know whether she could retain a new lawyer unfamiliar with the case for a contingency fee.

Turner also responded to the transcript of the telephone call she had with lawyers from Defendant Law Firm after they withdrew. She stated:

> By the fall of 2009, I was physically and emotionally drained from the pending litigation.[4] My career was ruined and my ability to find work was impaired by the cases pending against me. I had examined every alternative available to me and, again, renewed my conversations with

[4]Turner claims that Defendant Law Firm withdrew in the summer of 2008.

> Kevin McManaman about my options and alternatives, the likelihood of success, risks and benefits, and costs of my options.
>
> . . .
>
> My attorneys have provided me with a copy of the Motion for Disqualification and documents that came with it. One of those documents was a transcript of a November 23, 2009, phone call with Gary Saretsky, his associate Sam Mauch and myself. Until I received those documents from my attorney, I did not know that my former lawyers had tape-recorded my phone calls. I was never told my calls with Gary Saretsky or Sam Mauch were being recorded.
>
> I did have the conversation with Gary Saretsky and Sam Mauch in November 2009 that is generally reflected in the transcript. I was desperate to have their help defending me. I intentionally disclosed to them that J. L. Spray was asking me to sue them for malpractice because I thought they might then be motivated to help me defend myself in the pending arbitrations. The purpose of my calls to them in November 2009 was to get their help.

(Filing No. 40-2 at CM/ECF p. 4 at ¶¶ 13, 15, 16 (paragraph numbering omitted).)

## *III. ANALYSIS*

The law in this Circuit regarding disqualification of lawyers imposes the burden of proof on the moving party[5] and any such motion must be subjected to "particularly strict judicial scrutiny" because of the potential for abuse. *See*, *e.g.*, *Midwest Motor Sports v. Arctic Cat Sales*, Inc., 347 F.3d 693, 700-701 (8th Cir. 2003) (refusal to disqualify franchisee's attorney for conflict of interest, in suit alleging franchisor had wrongfully switched to another franchisee, was not abuse of discretion; even though counsel's firm had represented one of the replacement franchisee's principals on

[5]Defendant Law Firm concedes that it has the burden of proof. (Filing No. 34 at CM/ECF p. 11.)

business matters, both franchisees had waived any conflict of interest) (citations omitted).[6]

"A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca Transport Co. v. Philadelphia Indemnity Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (internal quotation & citation omitted). In *Macheca*, the Court of Appeals held that it was reversible error to disqualify the plaintiff's counsel without first establishing that the lawyer was the only witness available to testify about the plaintiff's assertion that an insurance company vexatiously refused to pay a claim. *Id.* at 833-834.

When it comes to disqualifying counsel at the pretrial stage, the Court of Appeals takes a very dim view of such a ruling. *See, e.g., Droste v. Julien*, 477 F.3d 1030, 1035 (8th Cir. 2007) (district court abused its discretion in making pretrial disqualification of plaintiffs' counsel, on ground that counsel would likely be a necessary witness; on its face the relevant ethical rule did not apply to pretrial proceedings, and court did not indicate why pretrial disqualification of counsel was necessary or consider whether pretrial disqualification would work a substantial hardship upon the plaintiffs).

---

[6]Defendant Law Firm asserts that legitimate doubts must be resolved in favor of disqualification. If one delves deeper, one finds that the "legitimate doubt" proposition is stated in a 33-year-old criminal case. *See Coffelt v. Shell*, 577 F.2d 30, 32 (8th Cir. 1978). That was an unusual appeal involving the trial judge's power to manage a criminal case. The Court of Appeals held that the district court did not abuse its discretion in disqualifying an attorney from further representation of a client in a federal prosecution in which the government called as a witness an informant who was also being represented by that same attorney in a state criminal prosecution. While I think it obvious that *Coffelt* is not directly applicable to civil cases like this one, I am willing, for the sake of argument, to accept the proposition that *legitimate* doubts are to be resolved in favor of disqualification.

In *Droste*, the Court of Appeals stressed the following: "In most jurisdictions, a lawyer who is likely to be a necessary witness may still represent a client in the pretrial stage." *Id.* (internal quotation & citations omitted). The Court of Appeals cited with approval a Florida case holding, according to the Court of Appeals, that the "trial court erred in disqualifying counsel who would be witness at trial from participating in pretrial depositions." *Id.* (citing *Cerillo v. Highley*, 797 So. 2d 1288, 1289 (Fla. Dist. Ct. App. 2001)).[7]

After carefully examining the record and the law as stated by the Court of Appeals (as opposed to decisions by lower courts or decisions from other jurisdictions), and applying the required "particularly strict judicial scrutiny," the disqualification of Turner's counsel is not "absolutely necessary" at this early stage of the litigation. The following observations are provided to flesh out my decision.

*Public Policy*

Judge Zwart engaged in a scholarly review of public policy considerations regarding the issue of whether a former litigation adversary should be allowed to hire his or her former opponent's lawyer to prosecute a case that is different from, but derivative of, the earlier matter. With respect, I conclude that the emphasis upon "public policy" is contrary to the law. Judge Zwart and the Defendant Law Firm have failed to cite any precedent from the Eighth Circuit that justifies the disqualification

[7] The Court of Appeals added, however, that in circumstances where the pretrial activity of the lawyer would result in the jury observing a lawyer act in dual capacities—as a *necessary* witness and as an advocate—then there is an exception to the general rule and pretrial disqualification may be warranted. *Id.* at 1035-1036 (citing *World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*, 866 F. Supp. 1297, 1303 (D. Colo. 1994)). Note that in *Macheca*, 463 F.3d at 833, the Court of Appeals held that a witness is "necessary" if there are things to which he is the *only* one available to testify.

of counsel based upon public policy notions. It is for the Court of Appeals to adopt such a policy if one is to be adopted.[8]

Regarding the telephone call that Turner evidently placed to members of Defendant Law Firm after the money ran out and the firm left Plaintiff without representation, and unlike Judge Zwart, I am *not* persuaded that the conversation "reinforces and illustrate[s] the public policy concerns . . . including whether such arrangements open the door for collusive behavior to the point where public confidence in the legal system will undoubtedly be damaged." (Filing No. 44 at CM/ECF p. 10.)

Initially, and absent the Court of Appeals telling us what "public policy" principles we are to apply, I fail to understand the legal significance of the secretly recorded telephone call to the issue of disqualification.[9] In other words, if a judge does not know the rule because a superior court has failed to articulate one, the judge is in no position to determine the relevance of evidence allegedly related to that unknown rule.

More specifically, if the concern is collusion in the sense that the damages might have been inflated by the settlement with the arbitration claimants, that issue can be addressed like all other damage questions. Pretrial disqualification does not appear necessary to get at that issue.

---

[8]Whether state substantive law could provide the decisional rule for disqualification on "public policy" grounds—in a case prosecuted in federal court—is an interesting question. That aside, Judge Zwart and the Defendant Law firm cite no Nebraska cases precluding Turner from hiring her former legal adversaries to sue her former counsel.

[9]If it is true the members of the Defendant Law Firm secretly recorded Turner's telephone call, an ethical issue may be involved. *See*, *e.g.*, *Midwest Motor Sports*, 347 F.3d at 699-700 (affirming evidentiary sanctions for, among other things, surreptitious audio recordings).

If the issue is whether Turner desires to bring this action at all, her affidavit indicating a desire to proceed is certainly sufficient to avoid disqualification at this stage of the proceeding. In that same respect, the newly submitted joint-representation agreement[10] establishes that Turner has a strong economic incentive to bring suit beyond merely hoping to stave off execution. She is to receive the first $30,000 of any net proceeds, and half the balance of net proceeds over $4,530,000. That is not chump change.

*Ethics and Spray or Gaba as "Necessary" Witnesses*

Judge Zwart was concerned that ethical rules called into question the propriety of lawyers testifying while they served as advocates in the same case. Our local rules provide that attorneys "must refrain from conduct unbecoming of a member of the bar." NEGenR 1.7(b). Our local rules further provide that this court "declines to adopt other codes of professional responsibility or ethics[,]" although we may consult such codes, in addition to any other material, when determining whether a lawyer has engaged in conduct unbecoming of a member of the bar. NEGenR 1.7(b)(2)(A)-(B).

It is unnecessary to survey the various codes and sources of ethics. Our Court of Appeals has canvassed the ethics field for us when it comes to the lawyer-witness problem involved in this case. *See*, *e.g.*, *Droste*, 477 F.3d at 1035-1036; *Macheca*, 463 F.3d at 833-834. In the pretrial context, two rules apply when it is alleged that a lawyer may be called to provide evidence in the same case where the lawyer also appears as an advocate.

First, pretrial disqualification is generally inappropriate unless the lawyer is a "necessary" witness—that is, (a) the lawyer must be "necessary" in the sense that

[10] Turner's counsel did themselves no favor by failing to provide Judge Zwart with the joint-representation agreement. If I were her, the word "sandbagged" would come to mind. I trust it is sufficient for me to state that I will not tolerate gamesmanship.

there are things to which he is the only one available to testify and (b) the jury will likely become aware of the lawyer's dual role. Second, even if the lawyer is the only one able to provide the evidence, if the jury may not know of the lawyer's dual role at the time of trial, pretrial disqualification is inappropriate if the disqualification works a substantial hardship upon the party employing that lawyer when that hardship is balanced against the interests of the adversary.

Judge Zwart was concerned that Spray and Gaba would have to testify about settlement offers they made to the Defendant Law Firm and about their settlement agreement with Turner, presumably now including the joint-representation agreement. I next address those concerns.

Regarding the settlement offers, I see no basis at this point for concluding that either Spray or Gaba have knowledge of something to which they are the only ones available to testify. If there were written settlement offers, there would appear to be no need for their testimony. If the offers were oral, in whole or in part, but memorialized by a document, such testimony might not be necessary. Perhaps the defendants will admit that settlement offers were made. Spray and Gaba might also limit their claims only to offers that could be proven independent of their testimony. Moreover, Spray and Gaba might be willing to stipulate to or admit facts that would make it unnecessary to depose them or make it unnecessary to use their depositions at trial, even if they were deposed.[11] At this point, we do not know enough about the case to conclude that Spray or Gaba are "necessary witnesses" when it comes to the issue of settlement offers.

---

[11]If they are deposed, they should not attempt to defend their own depositions. That can be handled by Turner's other lawyers such as Ms. Vannoy or Mr. Petersen. (But they should first read my concluding thoughts about associating with outside counsel.) To be clear, this note should not be taken as an authorization to depose Spray or Gaba without a specific order from Judge Zwart allowing such a deposition after notice and an opportunity to be heard.

The same is true for the settlement agreement and the joint-representation agreement, but several additional points merit mention. I question why any testimony is necessary from anyone regarding these documents. Turner has produced the documents, there appears to be no dispute as to their authenticity, and it is generally true that written agreements require no testimony as to their meaning if the documents are unambiguous. Moreover, Turner would be available to give testimony about the settlement agreement and the joint-representation agreement. Indeed, her testimony, if testimony is needed at all, would appear to be the only critical input. Additionally, James B. Cavanagh, a lawyer and signatory to the settlement agreement for some of the claimants, but who has not appeared as counsel in this case, might also be available to testify as to that document. As before, it is too early to tell whether Spray or Gaba are "necessary witnesses" when it comes to the settlement agreement or joint-representation agreement.

Lastly, Judge Zwart gave short shrift to the question of whether pretrial disqualification would work a substantial hardship on Turner. The judge merely concluded that: "Assuming Turner's claim has some factual merit, the court is confident Turner could find another 'competent' attorney who could 'get up to speed' on the issues in this case to help her pursue her legal malpractice claims against the Saretsky Firm and the other named defendants." (Filing No. 44 at CM/ECF p. 11.)

Respectfully, the judge's conclusion is too summary. This is a very complex case that not only involves an allegation of malpractice, but many other claims centering on the duty of an insurance company to fairly defend an insured in numerous complex arbitrations, dealing with securities claims in the tens of millions of dollars, spanning several years. Turner's present lawyers have invested much time and money understanding and investigating this case and the predecessor arbitrations, and it would be hard and very expensive (not to mention wasteful) for a new lawyer to replicate those efforts. Turner faces defendants with "deep pockets" who are represented by extraordinarily able lawyers who are not shy. This case is likely to be a tussle—it is not a mill-run tort case.

We know from Turner's affidavit that after years of defending the arbitrations, she can not afford to hire a lawyer on an hourly basis. While Spray and Gaba were willing to take this case on a contingency fee most likely because they already know so much about it from the arbitrations, it would be a substantial burden upon, and perhaps an impossibility for, Turner to find a lawyer who is sufficiently experienced and able to prosecute this action alone *and* who is willing to undertake the very substantial risk of handling this matter for a contingency fee. While I agree that there is also a burden upon the Defendant Law Firm in being forced to deal with Spray and Gaba, who arguably may be seen to act as advocates and witnesses,[12] the balance of the hardship predominates in favor of Turner at this early stage of the litigation.

*The Affirmative Defenses and Nebraska Law*

Judge Zwart was concerned about the likelihood that Spray and Gaba would have to testify about the affirmative defenses, particularly as those defenses regarded the settlement agreement which we now know was supplemented by a joint-representation agreement. While I have already discussed the issue of "necessary" witness testimony, it is helpful to additionally comment upon the affirmative defenses and the issue of disqualification.

The thrust of the affirmative defenses is that Turner illegally assigned her malpractice cause of action under the settlement agreement and, I assume, the joint-representation agreement. Because the settlement agreement and subsequent joint-representation agreement so provide, I assume Nebraska law applies.

Under Nebraska law, the assignment of the proceeds of a cause of action and the right to prosecute it constitutes an assignment of the cause of action for purposes of the Nebraska rule against the assignment of malpractice actions. *Community First State Bank v. Olsen*, 587 N.W.2d 364, 368 (Neb. 1998) (holding that (1) the granting

[12]As I point out in the conclusion to this opinion, there may be a partial solution and I will request (but not order) Spray and Gaba to look into it.

of the proceeds of a cause of action and the right to prosecute it constitutes an assignment of the cause of action for purposes of the rule against the assignment of malpractice actions; and (2) a genuine issue of material fact existed as to whether the original holder of the claim wished to pursue legal malpractice claim that it had improperly assigned and therefore the grant of summary judgment was reversed). If such an assignment is attempted, "the document is void in its entirety." *Id.*

However, even where a purported assignment has been made and thereafter voided, it is a factual question whether the party making the assignment has the intention to prosecute the action as if the assignment had not been made. *Id.* Given Turner's affidavit, and the subsequent joint-representation agreement, the evidence is insufficient to support a finding that Turner has no intention of prosecuting this action. As in *Community First State Bank*, it is reversible error to conclude otherwise given the record before us.

In this same vein, Judge Zwart reasoned that it "is not clear Turner had any reasonable opportunity to decide who would represent her." (Filing No. 44 at CM/ECF p. 11.) This lack of clarity evidently flowed in part from Judge Zwart's perplexity over the terms of the settlement agreement. In my view, Judge Zwart's finding erroneously shifted the burden to Turner rather than the Defendant Law Firm. For disqualification purposes, if the issue of choice is relevant under the documents (or otherwise), the Defendant Law Firm had the burden to prove that Turner lacked the opportunity to decide who would represent her. If, as Judge Zwart found, the evidence including the documents was unclear, then the Defendant Law Firm failed in its burden to prove the facts requiring disqualification.

Still further, we cannot resolve the legality of either agreement under Nebraska law without appropriate motion practice and briefing. It would be improper to turn a disqualification motion into a covert motion to dismiss or a sub rosa summary judgment motion regarding the legal effect of the settlement agreement or joint-

representation agreement.[13] But that is the practical result of the judge's disqualification ruling.

In short, it is inappropriate to guess about the impact of these agreements at this time. It is therefore improper to disqualify counsel prior to trial on the basis of speculative impressions regarding the possible significance of these documents in relation to the affirmative defenses.

## *IV. CONCLUSION*

The disqualification order was premature. Having said that, my decision may march us into a quagmire, and I will not fault Judge Zwart for later reminding me that "I told you so." Nonetheless, as I read the opinions of the Court of Appeals, disqualification of counsel at the pretrial stage of litigation is strongly disfavored, and practical concerns of trial courts and trial lawyers are insufficient to support such disqualification.

Lastly, I have a final suggestion that I hope Turner and her lawyers will take to heart. Although I do not require it, they would be well-advised to try to associate with independent outside co-counsel to assist them during the discovery and motion practice phase of this matter and at trial, if trial becomes necessary.[14] As noted earlier, it is doubtful that Turner could find a new but experienced lawyer to take this case

---

[13] Nothing I have written should be construed as expressing an opinion on the ultimate question of whether the agreements are valid or invalid or any other subsidiary legal or factual question that is outcome-determinative on a claim or defense.

[14] James B. Cavanagh and his firm were also signatories to the settlement agreement as counsel for the arbitration claimants. Intending no criticism of Mr. Cavanagh and his firm, and while not prejudging the question, those lawyers might not be sufficiently independent.

over by himself or herself for a contingency fee. It might be possible, however, to locate competent and independent counsel to associate with Turner's present lawyers.

IT IS ORDERED that:

1. Turner's objection (filing no. 61) to the motion to file evidence and evidence in support of the Magistrate Judge's order is denied as moot;

2. Turner's motion (filing no. 62) for leave to file a supplemental brief is granted, and the brief has been considered by the court;

3. The objection (filing no. 47) to Magistrate Judge Zwart's order of disqualification (filing no. 44) is sustained, and the order of disqualification (filing no. 44) is reversed. The motion for disqualification (filing no. 33) is denied without prejudice; and

4. This matter is referred to Magistrate Judge Zwart for further progression.

DATED this 18th day of October, 2011.

BY THE COURT:
s/*Richard G. Kopf*
United States District Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.